UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

*Suppressed*

FILED
MAR 11 2026
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) No. | |
| ) | |
| ADEBANJO "BANJO" POPOOLA, ) | 4:26CR116 ZMB/NCC |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that:

### COUNTS 1 THROUGH 3
### WIRE FRAUD

**A. INTRODUCTION**

At all times relevant to the Indictment:

1. Defendant, **ADEBANJO "BANJO" POPOOLA** (hereinafter referred to as "**POPOOLA**"), was employed by the City of St. Louis, Missouri as a Building Division Inspector. **POPOOLA** was an authorized Agent of the City of St. Louis, Missouri in his position as a Building Division Inspector.

2. Stable Communities STL was a City of St. Louis, Missouri program intended to rehabilitate and stabilize privately owned properties within the City. Stable Communities STL was funded through federal American Rescue Plan Act ("ARPA") funds received by the City, with the original intention that the owners of the private properties would reimburse the City for ARPA funds paid to contractors which purportedly provided the rehabilitation and stabilization work.

1

3. Prop NS was a City of St. Louis, Missouri program intended to rehabilitate and stabilize vacant residential properties within the City which were owned by the City's Land Reutilization Authority ("LRA"). Prop NS was funded through City issued general obligation bonds, which funds were used to pay contractors which purportedly provided the rehabilitation and stabilization work.

4. For both the Stable Communities STL and Prop NS programs, **POPOOLA** was tasked with: (1) identifying the privately owned or city owned properties for rehabilitation and stabilization; (2) developing the scope of work for each property; (3) bidding out the work for each property; (4) reviewing the submitted bids for each property; (5) selecting the contractor to perform the work for each property; (6) inspecting the purported completed work for each property; and, (7) certifying to the City's Comptroller's Office that the work had been completed and funds should be disbursed to the contractor for each respective property.

5. Farst Construction, LLC (hereinafter referred to as "Farst") was a company incorporated in Missouri during October, 2022 by a Sugar Land, Texas nurse (hereinafter referred to as "F.O"). F.O. was the sister of **POPOOLA** and was solicited by **POPOOLA** to incorporate Farst, despite F.O. having no professional experience in construction work or in construction contracting. Prior to incorporating Farst, F.O. had never visited the City of St. Louis, Missouri.

6. Premier Finish Contractors, LLC (hereinafter referred to as "Premier") was incorporated in Missouri during February, 2021 by an individual (hereinafter referred to as "T.G."). T.G. married **POPOOLA** during September, 2023 in Hawaii, after having dated each other for some time.

2

B. **SCHEME TO DEFRAUD**

7. Beginning in or about February, 2021 and continuing through in or about August 2024, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendant,

**ADEBANJO "BANJO" POPOOLA,**

aided and abetted by one and more other individuals, including F.O. and T.G., devised, intended to devise, and knowingly participated in a scheme to defraud and for obtaining money and property from the City of St. Louis and the United States of America, in an approximate amount of $1,672,660.48 by means of materially false and fraudulent pretenses, representations, and promises.

**FARST**

8. It was a part of the scheme that, from approximately June 12, 2023 through November 22, 2024, **POPOOLA** caused Farst to be awarded construction contracts as part of the City's Stable Communities STL program, for which Farst was paid approximately $1,404,325.00 for purported rehabilitation and stabilization work. Further, from approximately February 22, 2023 through March 5, 2024, **POPOOLA** caused Farst to be awarded construction contracts as part of the City's Prop NS program, for which Farst was paid approximately $339,500.00 for purported rehabilitation and stabilization work.

9. It was a further part of the scheme that, on one and more of the rehabilitation and stabilization projects under both the Stable Communities STL and the Prop NS programs, Farst failed to perform the rehabilitation and stabilization work as contracted, but **POPOOLA** falsely certified to the City's Comptroller that the work had been performed completely and properly.

10. It was a further part of the scheme that **POPOOLA** and F.O. maintained one and more joint bank accounts where the funds received from both the Stable Communities STL and the Prop NS programs were transferred after being deposited into a Farst account. Further, after **POPOOLA** used a number of addresses for the purported office of Farst, including the residence address of **POPOOLA's** ex-wife, **POPOOLA** changed the Farst office address to a St. Louis area UPS mailing box. **POPOOLA** personally established the UPS mailing box in the name of Farst, where correspondence and disbursement checks from the City were later delivered. On at least one occasion, on or about October 9, 2023, Farst received a City check in the amount of $70,600.00 into that UPS mailing box which **POPOOLA** retrieved, endorsed and deposited into a Farst bank account.

11. It was a further part of the scheme that F.O. shared funds received by Farst through both the Stable Communities STL and the Prop NS programs with **POPOOLA**. As just one example, after Farst received its first $29,500 in funds through the City's Prop NS program during February, 2023, F.O. immediately issued herself a check from the Farst business account in the amount of $15,000 which she deposited into her personal bank account. F.O. then immediately issued **POPOOLA** a $10,000 check from that same personal bank account.

**PREMIER**

12. It was a further part of the scheme that, from approximately October 9, 2023 through May 7, 2024, **POPOOLA** caused Premier to be awarded construction contracts as part of the City's Stable Communities STL program, for which Premier was paid approximately $1,327,200.00 for purported rehabilitation and stabilization work. Further, from approximately January 13, 2023 through June 11, 2024, **POPOOLA** caused Premier to be awarded construction

contracts as part of the City's Prop NS program, for which Premier was paid approximately $1,035,100.00 for purported rehabilitation and stabilization work.

13. It was a further part of the scheme that, on one and more of the rehabilitation and stabilization projects under both the Stable Communities STL and the Prop NS programs, Premier failed to perform the rehabilitation and stabilization work as contracted, but **POPOOLA** falsely certified to the City's Comptroller that the work had been performed completely and properly.

14. It was a further part of the scheme that **POPOOLA** and T.G. maintained a residence together, as well as one and more joint bank accounts where the funds received from both the Stable Communities STL and the Prop NS programs were transferred.   T.G. shared funds which Premier received through both the Stable Communities STL and the Prop NS programs with **POPOOLA**.

### OTHER ASPECTS OF THE SCHEME

15. It was a further part of the scheme that, on annual City of St. Louis Employee Secondary Employment Questionnaires dated August 8, 2022 and August 8, 2023, **POPOOLA** falsely stated and represented that he had no personal interest, directly or indirectly, in a contract with the City of St. Louis including any agency, division or department of the City of St. Louis, and he also falsely represented that he had no interest in any business.   These statements were false, as **POPOOLA** well knew, based upon **POPOOLA's** various ongoing interests in Farst and Premier.

16. It was a further part of the scheme that, on each contract issued to either Farst or Premier through the City's Stable Communities STL program, F.O. or T.G., respectively, falsely certified that "No officer, employee, or member of the governing body of the City of St. Louis, Missouri who exercises any functions or responsibilities in connection with the carrying out of the

5

Project to which this Contract pertains shall have any private interest, direct or indirect, in this contract." These certifications were false, based upon **POPOOLA**'s various ongoing interests in Farst and Premier. **POPOOLA** was well aware of these false certifications contained in the contracts as he caused the drafting and issuance of these contracts to both Farst and Premier.

17. It was a further part of the scheme that, of the 59 contracts awarded through the City's Stable Communities STL program, **POPOOLA** caused 13 to be awarded to Farst and 10 to be issued to Premier. Of the approximately $7,995,711.00 total ARPA funds awarded through the City's Stable Communities STL program, Farst was awarded approximately $1,794,325.00, and Premier was awarded approximately $1,536,200.00, or a combined 42% of the total funds awarded.

18. It was a further part of the scheme that, of the 144 contracts awarded through the City's Prop NS program, **POPOOLA** caused 8 to be awarded to Farst and 23 to be awarded to Premier. Of the approximately $5,648,350.00 total Prop NS funds awarded, Farst was awarded approximately $339,500.00, and Premier was awarded approximately $1,035,100.00, or a combined 24% of the total funds awarded.

19. It was a further part of the scheme that, of the funds **POPOOLA** received which were disbursed to Farst and Premier through both the City's Stable Communities STL and the Prop NS programs, **POPOOLA** used the funds for his own personal use, including, but not limited to, residential mortgage payments, multiple automobile purchases and repairs, travel expenses, his and T.G.'s Hawaii wedding, casino gambling, and other dining and entertainment expenses. Of the total funds disbursed to Farst and Premier through both the City's Stable Communities STL and Prop NS programs, **POPOOLA**, F.O., and T.G. shared in and personally used approximately $1,672,660.48 after paying subcontractors for purported work on the stabilization projects.

C.  **THE WIRES**

### COUNT ONE

20.  On or about June 12, 2023, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations, the defendant,

**ADEBANJO "BANJO" POPOOLA,**

aided and abetted by one and more individuals, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, that is the Defendant and T.G. utilized a Premier VISA debit card, issued by US Bank and ending in 2988, to transmit $681.60 to Delta Airlines via the internet in full payment of airline tickets for **POPOOLA** to travel from St. Louis, Missouri to Honolulu, Hawaii for his wedding to T.G. The transmitted funds originated from Prop NS funds issued to Premier.

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT TWO

21.  On or about June 12, 2023, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations, the defendant,

**ADEBANJO "BANJO" POPOOLA,**

aided and abetted by one and more individuals, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, that is the Defendant and T.G. utilized a Premier VISA debit card, issued by US Bank and ending in 2988, to transmit $681.60 to Delta Airlines via the internet in full payment of airline

tickets for T.G. to travel from St. Louis, Missouri to Honolulu, Hawaii for her wedding to **POPOOLA**. The transmitted funds originated from Prop NS funds issued to Premier.

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT THREE

22. On or about April 24, 2024, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations, the defendant,

**ADEBANJO "BANJO" POPOOLA**,

aided and abetted by one and more individuals, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, that is the Defendant utilized a Premier VISA debit card, issued by US Bank and ending in 2129, to transmit $5,380.26 to Mungenast Lexus Automotive via the internet relative to the repair of a Lexus RX 350 automobile which was registered to **POPOOLA**. The transmitted funds originated from Stable Communities STL funds issued to Premier.

In violation of Title 18, United States Code, Sections 1343 and 2.

### FORFEITURE ALLEGATION

The United States Attorney further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Counts 1 through 3, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $1,672,660.48.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

THOMAS C. ALBUS
United States Attorney

_____
Hal Goldsmith #32984MO
Assistant United States Attorney